

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ALEXANDER NEUMEISTER,

    Defendant.

17 Civ. 9287 (AKH)

**STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL**

## STIPULATION AND ORDER OF SETTLEMENT AND DISMISSAL

WHEREAS, this Stipulation and Order of Settlement and Dismissal ("Stipulation") is entered into by and among plaintiff the United States of America (the "United States" or "Government"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York; and defendant Alexander Neumeister ("Defendant," and together with the Government, the "Parties"), by his authorized representatives;

WHEREAS, the Government alleges that, from 2012 to 2014 (the "Covered Period"), Defendant misappropriated federal funds that were obtained from National Institute of Mental Health ("NIMH") and were supposed to have been used to advance federally-funded research studies, but instead were used by Defendant for his own personal benefit. The conduct described in this Paragraph is the "Covered Conduct" for purposes of this Stipulation;

WHEREAS, in or about November 2017, the Government filed a civil complaint (the "Civil Complaint") against Defendant in which it asserted claims under the False Claims Act ("FCA"), 31 U.S.C. § 3729 *et seq.*, and the common law for the Covered Conduct;

1

WHEREAS, in or about November 2017, the Government filed a criminal complaint against Defendant in which it charged Defendant with, *inter alia*, theft of government funds, in violation of 18 U.S.C. § 641, in connection with the Covered Conduct;

WHEREAS, in or about May 2018, Defendant pled guilty to the above-referenced charge pursuant to a plea agreement in which Defendant agreed to pay restitution in the amount of $87,763.99 ("Restitution Amount"). The method and timing of Defendant's payment of the Restitution Amount ("Payment Conditions") will be determined in the context of the criminal proceeding against him;

WHEREAS, the Parties have, through this Stipulation, reached a mutually agreeable resolution addressing the claims asserted against Defendant in the Civil Complaint for the Covered Conduct;

NOW, THEREFORE, upon the Parties' agreement IT IS HEREBY ORDERED that:

**TERMS AND CONDITIONS**

1. The Parties agree that this Court has subject matter jurisdiction over this action and consent to this Court's exercise of personal jurisdiction over each of them.

2. Defendant admits, acknowledges and accepts responsibility for the following conduct:

   a. During the Covered Period, Defendant was a professor in the psychiatry department of a medical school located in the Southern District of New York (the "School"). In his capacity as an employee of the School, Defendant served as the principal investigator for a variety of research studies, many of which were funded by grants issued by NIMH. As the principal investigator for these studies, Defendant was responsible for overseeing all aspects of the studies.

2

b. Defendant was also given a credit card by the School, referred to internally within the School as a "P-Card." Defendant was authorized to charge study-related expenses to the P-Card, and then to identify the specific funding source to which each such expense should be allocated. In identifying the funding source to which a particular expense should be charged, Defendant was able to allocate the expense to specific grants, including NIMH grants. To the extent that Defendant allocated a particular expense to a specific grant, such as an NIMH grant, the School would pay the expense using funds it obtained from the grant source.

c. As a condition of receiving an NIMH grant for a research study, the School was required to certify to NIMH, among other things, that the NIMH grant funds would be used for the purposes set forth in the grant application.

d. Moreover, before the School submitted a grant application to NIMH, the School required Defendant to sign a certification affirming, among other things, "that the statements [in the grant application] are true, complete and accurate to the best of [his] knowledge," and that he was "aware that any false, fictitious, or fraudulent statements or claims may subject [him] to criminal, civil, or administrative penalties."

e. Notwithstanding the above-referenced certifications by the School and Defendant, throughout the Covered Period, Defendant routinely (1) used his P-Card to pay for expenses that had nothing to do with his NIMH-funded research and instead were incurred for the benefit of himself, his family, or a personal

friend (the "Friend"); and (2) allocated those expenses to NIMH grants, thus causing the School to pay the expenses using NIMH grant funds.

f. The expenses Defendant wrongfully caused the School to pay using NIMH grant funds included, but were not limited to, trips for family members and trips and meals for himself and the Friend. For example, NIMH funds were used to pay for, among other things, airline tickets, ground transportation, lodging, and other travel-related expenses, as well as lunches, dinners, and bar tabs.

g. In the written explanations that Defendant provided to the School for the above-referenced expenses, Defendant misrepresented that the expenses were incurred in connection with NIMH research studies, when in fact the expenses were unrelated to the studies.

3. Defendant shall pay to the Government a total of $33,215.43 (the "Settlement Amount") in accordance with instructions to be provided by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York in two installments: (i) by October 17, 2018, the sum of $10,000.00 plus interest which shall be compounded annually at a rate of 2.48% accruing from September 26, 2018, to the date of the payment, and (ii) by April 17, 2019, the sum of $23,215.43 plus interest which shall be compounded annually at a rate of 2.48% accruing from September 26, 2018, to the date of the payment. Of the Settlement Amount, $0.00 constitutes restitution to the United States.

4. Defendant agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Stipulation. Defendant agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control

4

concerning any investigation of the Covered Conduct that he has undertaken, or that has been performed by another on his behalf.

5. Subject to the exceptions in Paragraphs 7 and 11 below (concerning excluded claims and bankruptcy proceedings), and conditioned upon Defendant's full compliance with the terms of this Stipulation, including full payment of the Settlement Amount to the United States pursuant to Paragraph 3 above, as well as Defendant's full payment of the Restitution Amount in accordance with the Payment Conditions, the United States releases Defendant from any civil or administrative monetary claim that the United States has for the Covered Conduct under the FCA, the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a, the Program Fraud Civil Remedies Act, 31 U.S.C. § 3801-3812, and the common law theories of fraud, conversion, payment by mistake, and unjust enrichment.

6. Defendant fully and finally releases the United States, its agencies, officers, employees, servants, and agents from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Defendant has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, employees, servants, or agents related to the Covered Conduct and the United States' investigation, prosecution and settlement thereof.

7. Notwithstanding the releases given in Paragraph 6 above, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

    a. any liability arising under Title 26, United States Code (Internal Revenue Code);

    b. any criminal liability;

    c. except as explicitly stated in this Stipulation, any administrative liability, including but not limited to the suspension and debarment rights of any federal agency; or the mandatory or permissive exclusion from Federal health care programs (as defined in 42 U.S.C. §1320a-7b(f)) under 42 U.S.C. §1320a-7(a) (mandatory exclusion) or 42 U.S.C. §1320a-7b (permissive exclusion); suspension or debarment pursuant to 2 C.F.R. Part 376; or actions pursuant to, or otherwise consistent with, 42 C.F.R. § 52.9, 45 C.F.R. §§ 75.207- 75.208, or 45 C.F.R. §§ 75.371-75.375;

    d. any liability to the United States (or its agencies) for any conduct other than the Covered Conduct; and

    e. any liability based upon obligations created by this Stipulation.

8.    Defendant shall be in default of this Stipulation if Defendant fails to make either of the required payments set forth in Paragraph 3 above on or before the due date for such payments, or if it fails to comply materially with any other term of this Stipulation that applies to him, or if he fails to pay the Restitution Amount in accordance with the Payment Conditions ("Default"). The Government shall provide written notice to Defendant of any Default in the manner set forth in Paragraph 23 below. Defendant shall then have an opportunity to cure the Default within ten (10) calendar days from the date of delivery of the notice of Default. In the event that a Default is not fully cured within ten (10) calendar days of the delivery of the notice of Default ("Uncured Default"), interest shall accrue at the rate of 12% per annum compounded daily on the remaining unpaid principal balance of the Settlement Amount, beginning ten (10) calendar days after mailing of the notice of Default. In the event of an Uncured Default, Defendant shall agree to the entry of a consent judgment in favor of the United States against Defendant in the amount of $120,979.42

as attached hereto as Exhibit A. The United States may also, at its option, (a) rescind this Stipulation and reinstate the claims asserted against Defendant in the Civil Complaint; (b) seek specific performance of this Stipulation; (c) offset the remaining unpaid balance of the Settlement Amount from any amounts due and owing Defendant by any department, agency, or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. Defendant shall not contest any offset imposed or any collection undertaken by the Government pursuant to this Paragraph, either administratively or in any Federal or State court. In addition, Defendant shall pay the Government all reasonable costs of collection and enforcement under this Paragraph, including attorneys' fees and expenses. In the event that the United States opts to rescind this Stipulation pursuant to this Paragraph, Defendant shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that relate to the Covered Conduct.

9. Defendant waives and shall not assert any defenses Defendant may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.

10. Defendant represents and warrants that he has reviewed his financial situation, that he is currently not insolvent as such term is defined in 11 U.S.C. § 101(32) and that he reasonably believes that he shall remain solvent following payment to the Government of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they

(a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendant, within the meaning of 11 U.S.C. § 547(c)(1); and (b) have concluded that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendant was or became indebted to on or after the date of this Stipulation, within the meaning of 11 U.S.C. § 548(a)(1).

11.   If within 91 days of the Effective Date of this Stipulation (defined below in Paragraph 24) or any payment made under this Stipulation, Defendant commences any case, action, or other proceeding under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors or a third party commences any case, action, or other proceeding under any law related to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking an order for relief of Defendant's debts, or seeking to adjudicate Defendant as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendant or for all or part of Defendant's assets, Defendant agrees as follows:

    a. Defendant's obligations under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and Defendant shall not argue or otherwise take the position in any such case, action, or proceeding that (i) Defendant's obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (ii) Defendant was insolvent at the time this Stipulation was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to Defendant.

8

    b. If any of Defendant's obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, at its option, may rescind the release in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendant for the claims that would otherwise be covered by the release in Paragraph 6 above. Defendant agrees that (i) any such claim, action, or proceeding brought by the Government would not be subject to an "automatic stay" pursuant to 11 U.S.C. § 362(a) as a result of the case, action, or proceeding described in the first sentence of this Paragraph, and Defendant shall not argue or otherwise contend that the Government's claim, action, or proceeding is subject to an automatic stay; (ii) Defendant shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any claim, action, or proceeding that is brought by the Government within 60 calendar days of written notification to Defendant that the release has been rescinded pursuant to this Paragraph, except to the extent such defenses were available on November 28, 2017; and (iii) the Government has a valid claim against Defendant in the amount of $120,979.42 and the Government may pursue its claim in the case, action, or proceeding described in the first sentence of this Paragraph, as well as in any other case, action, or proceeding.

    c. Defendant acknowledges that the agreements in this Paragraph are provided in exchange for valuable consideration provided in this Stipulation.

12. Defendant has provided sworn financial disclosure statements ("Financial

Statements") to the United States and the United States has relied on the accuracy and completeness of those Financial Statements in reaching this Stipulation. Defendant warrants that the Financial Statements are complete, accurate, and current. If the United States learns of asset(s) in which Defendant had an interest at the time of this Stipulation that were not disclosed in the Financial Statements, or if the United States learns of any misrepresentation by Defendant on, or in connection with, the Financial Statements, and if such nondisclosure or misrepresentation changes the net worth of Defendant as reflected in the Financial Statements by $3,000 or more, the United States may at its option: (a) rescind this Stipulation and reinstate its suit based on the Covered Conduct, or (b) let the Stipulation stand and collect the full Settlement Amount plus one hundred percent (100%) of the value of the net worth of Defendant previously undisclosed. Defendant agrees not to contest any collection action undertaken by the United States pursuant to this provision, and immediately to pay the United States all reasonable costs incurred in such an action, including attorney's fees and expenses.

13. In the event that the United States, pursuant to Paragraph 12 above (concerning disclosure of assets) opts to rescind this Stipulation, Defendant agrees not to plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any civil or administrative claims that (a) are filed by the United States within 180 calendar days of written notification to Defendant that this Stipulation has been rescinded, and (b) are based on the Covered Conduct, except to the extent these defenses were available on November 28, 2017.

14. Defendant agrees to the following:

    a. Unallowable Costs Defined: All costs (as defined in the Office of Management and Budget ("OMB") Uniform Administrative Requirements, Cost Principles,

and Audit Requirements for Federal Awards published at 2 C.F.R. §§ 200 *et seq.*; the Department of Health and Human Services adoption of the OMB Guidance provided at 45 C.F.R. § 75, subpart E *et seq.*; the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47 where applicable; or otherwise as specified by federal statutes, regulations or the terms and conditions of a Federal award) incurred by or on behalf of Defendant, including his agents, in connection with:

(1) the matters covered by this Stipulation;

(2) the United States' audit(s) and civil or criminal investigation(s) of matters covered by this Stipulation;

(3) Defendant's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil or criminal investigation(s) in connection with matters covered by this Stipulation (including attorneys' fees);

(4) the negotiation and performance of this Stipulation; and

(5) any payment Defendant makes to the United States pursuant to this Stipulation, including expenses, costs and attorneys' fees;

are unallowable costs for government contracting purposes and under the Medicare Program, Medicaid Program, TRICARE Program, and Federal Employees Health Benefits Program (FEHBP) (hereinafter referred to as "Unallowable Costs").

b. Future Treatment of Unallowable Costs: Unallowable Costs shall be separately determined and accounted for by Defendant, and Defendant shall not charge

such Unallowable Costs directly or indirectly to any contracts with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Stipulation, Defendant shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs (as defined in this Paragraph) included in payments previously sought by Defendant from the United States. Defendant agrees that the United States, at a minimum, shall be entitled to recoup from Defendant any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. Any payments due shall be paid to the United States pursuant to the direction of the Department of Justice and/or the affected agencies. The United States, including the Department of Justice and/or the affected agencies, reserves its right to audit, examine, or re-examine Defendant's books and records and to disagree with any calculation submitted by Defendant or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendant, or the effect of any such Unallowable Costs on the amounts of such payments.

d. Nothing in this Stipulation shall constitute a waiver of the rights of the United States to audit, examine, or re-examine Defendant's books and records to determine that no Unallowable Costs have been claimed in accordance with the provisions of this Paragraph.

15. This Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity except as otherwise provided herein.

16. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

17. Any failure by the Government to insist upon the full or material performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon the full or material performance of any and all of the provisions of this Stipulation.

18. This Stipulation is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York. For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

19. This Stipulation constitutes the complete agreement between the Parties with respect to the subject matter hereof. This Stipulation may not be amended except by written consent of the Parties.

20. The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and the entities indicated below.

21. This Stipulation is binding on Defendant's successors.

22. This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation. E-mails that attach signatures in

PDF form or facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

23. Any notice pursuant to this Stipulation shall be in writing and shall, unless expressly provided otherwise herein, be delivered by hand, express courier, or e-mail transmission followed by postage-prepaid mail, and shall be addressed as follows:

TO THE UNITED STATES:

Christopher B. Harwood
Anthony J. Sun
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chambers Street, Third Floor
New York, New York 10007
Email: christopher.harwood@usdoj.gov
        anthony.sun@usdoj.gov

TO DEFENDANT:

Justine A. Harris
Sher Tremonte LLP
90 Broad Street
23rd Floor
New York, New York 10004
Email: jharris@shertremonte.com

24. The effective date of this Stipulation is the date upon which the Stipulation is approved by the Court (the "Effective Date").

Agreed to by:

**THE UNITED STATES OF AMERICA**

Dated: New York, New York
       October 10, 2018

                              GEOFFREY S. BERMAN
                              United States Attorney for the
                              Southern District of New York

By: _____
      CHRISTOPHER B. HARWOOD
      ANTHONY J. SUN
      Assistant United States Attorneys
      86 Chambers Street, Third Floor
      New York, New York 10007
      Tel.:  (212) 637-2728 / 2810
      Fax:  (212) 637-2786

      *Attorney for the United States of America*

15

**DEFENDANT ALEXANDER NEUMEISTER**

Dated: New York, New York
October 10, 2018

_____
Alexander Neumeister
*Defendant*

Dated: New York, New York
October 10, 2018

SHER TREMONTE LLP

By: _____
Justine A. Harris
*Attorneys for Defendant*

SO ORDERED:

_____
HON. ALVIN K. HELLERSTEIN
UNITED STATES DISTRICT JUDGE

Dated: Oct. 12, 2018